E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2238
     Facsimile: (213) 894-0141
     E-mail:    kyle.kahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:21-586(A)-JFW-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE REPORT REGARDING DEFENDANT TOYA TOSHELL HUNTER |
| v. | |
| TOYA TOSHELL HUNTER, | Hearing Date: April 24, 2023 |
| Defendant. | Hearing Time: 8:00 a.m.<br>Location:     Courtroom of the<br>              Hon. John F. Walter |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kyle W. Kahan, hereby files its Sentencing Position and Objections to the Presentence Report Regarding Defendant Toya Toshell Hunter.

///

///

This Sentencing Position and Objections to the Presentence Report is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.  The government reserves the right to file a sur-reply if necessary to address any positions that the defense or the United States Pretrial and Probation office may raise.

Dated: April 7, 2023                  Respectfully submitted,

                                                 E. MARTIN ESTRADA
                                                 United States Attorney

                                               MACK E. JENKINS
                                               Assistant United States Attorney
                                               Chief, Criminal Division

                                               */s/ Kyle W. Kahan*
                                               KYLE W. KAHAN
                                               Assistant United States Attorney

                                               Attorneys for Plaintiff
                                               UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant, a mail carrier for the United States Postal Service ("USPS"), abused her position by stealing access devices, checks, and personal identifying information ("PII") from mail assigned to her mail routes.  These access devices were cards intended for people who were struggling financially: those that were unemployed or impacted by the COVID-19 pandemic.  Defendant continued this abuse of trust by exchanging the stolen goods to a co-schemer in exchange for cash and gifts, knowing full well that the co-schemer intended to use the PII to fraudulently activate the access device cards and use them to make sham purchases and ATM withdrawals.  Defendant's role in this scheme was not limited to a facilitator.  Defendant herself used an access device that she stole from her mail route to fraudulently withdraw money and make illicit purchase.

On August 19, 2022, defendant was charged with 18 counts in a 20-count first superseding indictment with the following: (1) Bank Fraud, in violation of 18 U.S.C. § 1344(2); (2) Access Device Fraud in Excess of $1,000, in violation of 18 U.S.C. § 1029(a)(5); (3) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1); and (4) Embezzlement of Mail by a Postal Employee, in violation of 18 U.S.C. § 1709.  (Dkt. 30.)  On December 14, 2020, defendant pled guilty to count one of the first superseding information.  (Dkts. 57, 59.)

The United States Probation and Pretrial Services Office ("USPO") issued its Presentence Investigation Report on March 21, 2023.  ("PSR," Dkt. 67.)  In the PSR, the USPO calculated a total offense level of 18 and a Criminal History Category of I, which

results in a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 27 to 33 months.  (PSR ¶¶ 55, 61, 102.) On the same date, the USPO issued its Recommendation Letter ("USPO Rec.") and recommended that defendant be sentenced to a below-Guidelines custodial sentence of 24 months, three years of supervised release, no fine, and restitution totaling $206,212.18.  (USPO Rec., Dkt. 66 at 1-2.)

As discussed below, while the government agrees with the PSR's determination of criminal history and that the total offense level is 18,[1] the government does object to the loss and restitution calculations in the PSR.  Specifically, the government stands by the loss and restitution amounts agreed to by the parties in the plea agreement.

As a result, while defendant's lengthy and pervasive scheme unjustly enriched herself at the expense of those she was serving, the government respectfully submits that the low-end sentence is appropriate, just, and necessary to accomplish the goals set forth in 18 U.S.C. § 3553(a) once the appropriate offense characteristics are imposed.

**II.  PSR GUIDELINES CALCULATIONS AND OBJECTIONS**

On March 21, 2023, the USPO filed its PSR.  The USPO calculated defendant's adjusted offense level as 20 pursuant to the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Greater Than $150,000 But Less Than $250,000 | +10 | U.S.S.G. § 2B1.1(b)(1)(F) |

---

[1] The government contends that an additional two-level enhancement for defendant's trafficking of unauthorized access devices is warranted.  See U.S.S.G. § 2B1.1(b)(11)(B)(i).

2

| | | |
|---|---|---|
| More Than 10 Victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| Abuse Of Trust/Position | +2 | U.S.S.G. § 3B1.3 |

(See PSR ¶¶ 30, 33.)

After a three-point downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b), the USPO calculated defendant's total offense level as 18. (PSR ¶¶ 39-41.) Consistent with the parties' plea agreement, the government agrees that the base offense level is 7, and that two-level enhancements apply for (1) the scheme involving more than ten victims, and (2) for defendant's abuse of trust. The government also believes that a two-level enhancement for trafficking of unauthorized access devices applies under U.S.S.G. § 2B1.1(b)(11)(B)(i), which the USPO did not apply in this case.

The government, however, objects to the USPO's calculations of total loss and contends that the amount agreed upon by the parties in the plea agreement is appropriate. As a result, the government submits that an eight-level --- not ten-level --- enhancement should apply for loss exceeding $95,000 but less than $150,000 under U.S.S.G. § 2B1.1(b)(1)(E). Thus, after a three-point downward adjustment for acceptance of responsibility, the government contends defendant's total offense level is 18. With a criminal history category of I, the resulting Guidelines range is 27-33 months.

**III. STATEMENT OF FACTS**

In January 2019, defendant used her position as a USPS mail carrier to steal valuable and sensitive information from mail assigned to her mail route. (PSR ¶ 18.) This included California Employment Development Department ("EDD") cards, Economic Impact Payment ("EIP") cards, United States Treasury checks, and letters containing victims' PII. Despite being entrusted with the sanctity

3

of the mail, defendant violated her oath of office, stole these items, and gave them to her co-schemer in exchange for cash and gifts.  (PSR ¶¶ 18, 22.)  Defendant admitted to receiving over $80,000 in cash as part of her role in the scheme.  (PSR ¶ 22.)

Over the course of the scheme, defendant repeatedly stole from the mail and aided her co-schemer in committing bank fraud. Defendant would then give the card and PII to her co-schemer in exchange for cash and gifts, knowing that her co-schemer planned to fraudulently use the card.  (PSR ¶ 19.)  Defendant's acts were crucial to the scheme, as she was the source of not just the cards themselves, but the means to active them through the victims' PII. (PSR ¶ 19.)

An example of defendant's many thefts included a March 16, 2020 incident, where defendant opened mail assigned to her mail route and stole an EDD card and PII belonging to M.V.  (PSR ¶ 20.)  Defendant gave the card and PII to her co-schemer, who subsequently used the card to unlawfully withdraw $500 from a Bank of America ATM in Corona, California on March 24, 2020.  (PSR ¶ 20.)  From 2019 to 2020, defendant's thefts and trafficking of access devices and PII to her co-schemer led to unlawful withdrawals in a similar manner from 68 different victims' accounts with losses of $145,191.56 to Bank of America.  (Plea Agreement ¶ 11.)

In addition, defendant not only stole access devices, she would also use them.  This included an EIP card --- a card intended to assist people struggling during the COVID-19 pandemic --- that defendant elected to steal and use for her own unlawful withdrawal of $1,400 from ATMs.  (PSR ¶ 23.)

4

## IV. DEFENDANT TRAFFICKED UNAUTHORIZED ACCESS DEVICES AS PART OF HER SCHEME

This Court should impose a two-level enhancement for the trafficking of unauthorized access devices under U.S.S.G. § 2B1.1(b)(11)(B)(i).[2]  Defendant repeatedly stole access devices, including EDD and EIP cards, that were contained in mail assigned to her mail route.  Defendant then trafficked and transferred the access devices to a co-schemer in exchange for cash and gifts.  Because defendant stole the access devices and obtained them with the intend to defraud the access device's owners, defendant's trafficking and sale of the unauthorized devices to her co-schemer means an additional two-level enhancement under U.S.S.G. § 2B1.1(b)(11)(B)(i) is warranted.  See United States v. Nicolescu, 17 F.4th 706, 728 (6th Cir. 2021) (upholding the imposition of the instant offense characteristic for the sale of stolen credit-card numbers); cf. United States v. Charles, 757 F.3d 1222, 1226-27 (11th Cir. 2014) (precluding imposition of the instant offense characteristic only due to the defendant also being convicted of aggravated identity theft).

## V. A 27-MONTH SENTENCE IS JUST AND APPROPRIATE

For the reasons set forth below, the government respectfully recommends the following sentence: (1) a low-end Guidelines term of imprisonment of 27 months; (2) a three-year period of supervised release with a suspicion-less search condition;[3] and (3) a mandatory special assessment of $100.

---

[2] Unauthorized access devices are any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud.  18 U.S.C. § 1029(e)(3).

[3] The government recommends that the Court, at sentencing, incorporate by reference and impose the standard conditions of supervised release enumerated in General Order 20-04.

The government believes such a sentence appropriately balances the history and characteristics of the defendant with the need to reflect the seriousness of the offense, to protect the public, to deter defendant from further criminal acts, and to promote respect for the law.

### A. Nature and Circumstances of the Offense

The nature and circumstances of defendant's offense support a low-end Guidelines sentence of 27 months' imprisonment. See 18 U.S.C. § 3553(a)(1). Defendant's conduct impacted the ability of dozens of victims to receive unemployment benefits and funds necessary to stave off the impact of the COVID-19 pandemic. Defendant, who swore an oath to protect the sanctity of mail, violated that oath each and every time she stole mail. See 39 U.S.C. § 1011. Defendant's role was essential to the scheme. Without her, defendant's co-schemer could not obtain the necessary materials to further the scheme and withdraw funds. Indeed, defendant's position as a mail carrier is the reason she was able to steal so many access devices and PII. Given the circumstances of this case and defendant's violation of her oath to faithfully discharge the duties of her office, a low-end sentence of 27 months is appropriate.

### B. History and Characteristics of the Defendant

Defendant's history and characteristics present aggravating and mitigating circumstances supporting a low-end Guidelines sentence. Until this incident, defendant appears to have led a law-abiding life. The government acknowledges defendant's difficult upbringing, particularly the emotional trauma of having her father leave her life (PSR ¶ 68), her mother's substance abuse issues (PSR ¶ 69), the physical and emotional abuse she suffered at the hands of her

mother's boyfriend (PSR ¶ 71), and being grazed with a bullet during a drive-by shooting and later seeing a dead body after another shooting. (PSR ¶ 72.) The government further acknowledges defendant's medical issues, and lack of criminal history, although the latter is belied by the fact that defendant's criminal behavior was pervasive and lasted for years. The government also acknowledges the defendant is the mother of three children, two who are juveniles. (PSR ¶ 74.)

However, given that defendant has these familial responsibilities, she should have known better to risk her career, livelihood, and freedom all so that she could earn a quick buck. That defendant repeatedly engaged in criminal behavior despite a steady lengthy career at the USPS demonstrates that this was not a one-off crime of opportunity, but rather just plain, pure greed. A low-end Guidelines sentence of 27 months is an appropriate balance given both the aggravating and mitigating circumstances before the Court.

**C. Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public**

The sentence must satisfy defendant's need for punishment or rehabilitation, as well as society's need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public. There is a strong need for the sentence to specifically deter defendant from committing future crimes and generally deter others from committing similar crimes. See 18 U.S.C. § 3553(a)(2)(B).

Under the circumstances, a low-end 27-month sentence will impress upon defendant the seriousness of her crimes, give her time

7

to consider the consequences of his actions, and reflect on her choices and the people she associates with.  Said sentence will also serve as a deterrence to all other USPS employees to uphold their duties to faithfully deliver mail and not steal sensitive and valuable information, including PII.  The government's recommended custodial sentence, along with the three-year period of supervised release is sufficient to deter defendant in the future and protect the public.

### D. A Suspicion-less Search Condition Should be Imposed as a Term of Supervised Release Based on Defendant's Conduct and Post-Indictment Behavior

Because the defendant's conduct involved a significant amount of theft, the government believes that she should be subject to a suspicion-less search condition as part of her terms and conditions of supervised release.  Such a condition would provide an adequate deterrent against any recidivism and protect the public should defendant engage in any additional criminal activity while under supervision.

### VI. CONCLUSION

For the above reasons, the government respectfully requests that the Court impose the following sentence: (1) a low-end Guidelines term of imprisonment of 27 months; (2) a three-year period of supervised release with a suspicion-less search condition; and (3) a mandatory special assessment of $100.