**ROBERT M. BERNSTEIN  (SBN 183398)**
**LAW OFFICES OF ROBERT M. BERNSTEIN**
**9595 Wilshire Boulevard, Suite 900**
**Beverly Hills, California 90212**
**Telephone (310) 477-1480**
**Email: robert@california-law.org**

**Attorney for Defendant**
**TOYA TOSHELL HUNTER**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **Case No. 21-CR-00568-JFW** |
| **Plaintiff,** ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| **v.** ) | |
| **TOYA TOSHELL HUNTER,** ) | **Date:   April 24, 2023** |
| **Defendant.** ) | <u>**Court: Hon. John F. Walter**</u> |

Defendant, **TOYA TOSHELL HUNTER**, through counsel, hereby and herewith submits her Sentencing Memorandum.

Defendant reserves the opportunity to make additional comments through counsel at the sentencing hearing in this matter.

Date:  April 7, 2023                    Respectfully submitted,

By      _/s/ Robert M. Bernstein_
       **ROBERT M. BERNSTEIN**
       **Attorney for Defendant**
       **TOYA TOSHELL HUNTER**

1

# I.
## OVERVIEW AND RECOMMENDED SENTENCE

On December 14, 2022, Toya Toshell Hunter ("Hunter") pleaded guilty to Count 1 of the Indictment in that she aided and abetted her co-defendant to commit Bank Fraud in violation of 18 U.S.C. § 1344(2), 18 U.S.C. § 2(a).

Hunter fully understands that her actions constitute a serious criminal violation of the Federal law. She deeply regrets her misguided and illegal acts and realizes it will cause lasting damage to herself and her family.

Hunter's personal history along with the present offense's circumstances provide grounds for a downward variance and mitigation. In 2018, Hunter developed plantar fasciitis in both feet, resulting in extreme pain. The chronic pain prevented her from working the same hours on her postal route. Unfortunately, and perhaps unfairly, the USPS did not offer any disability payments for that specific injury—the most common among mail carriers. Her medical issues left her unable to support herself and provide for her children, placing her in danger of losing her home to foreclosure. This combination of medical and financial pressures led her to make the regrettable and terrible decision to aid and abet her co-defendant. (PSR ¶ 27)

The law recognizes the motivation of financial desperation as grounds for mitigation. *See, e.g., United States v. Gerard*, 782 F.Supp. 913, 914-915 (S.D.N.Y. 1992) (granting departure to impose sentence of five years' probation, notwithstanding Guidelines "range of 33 to 41 months", based in part upon "the financial desperation that lends explanation, though not excuse, to the activities for which Gerard is now being sentenced").

It is important to note that Hunter was not the leader nor organizer of this fraud scheme. Hunter's co-defendant, a childhood acquaintance, recruited her to use her access to personal information found in her mail route to aid and abet the bank fraud.

Hunter's situation differs from many other fraud cases, in that they usually involve defendants seeking a lavish lifestyle. Here, as her mitigating circumstances

2

converged, Hunter was drawn into the offense by her co-defendant to save her home from foreclosure and provide for her minor children.

As acknowledged in the PSR, Hunter accepts full responsibility for her poor decisions. Prior to her involvement in the instant offense, Hunter was a law-abiding citizen who had never violated the law.

The Probation Department, as well as the defendant through undersigned counsel, concur that a downward variance is warranted based on the facts that Hunter had a traumatic childhood and that the instant offense was committed due to financial stress. It is critical to note that Hunter has been a law-abiding citizen for the first 38 years of her life.

Although pursuant to the plea agreement the defense is precluded from requesting a sentence below 24 months, this Court is not bound by that provision. The mitigating factors here are even more powerful when taken cumulatively. Thus, the court may fashion a sentence below the suggested 24-month sentence.

The Defense respectfully submits that an incarceration term of no greater than 24 months would be "sufficient, but not greater than necessary" to satisfy the sentencing objectives set forth at 18 U.S.C. §3553(a) and serve the ends of justice.

## II.
## COMMENTS ON THE PSR AND ADVISORY GUIDELINES

The U.S. Probation Office has done a thorough job of summarizing the defendant's background, her childhood trauma, and severe financial stress which led to her involvement in this crime. The defense agrees with the Probation Department's calculation that the defendant's total offense level under the U.S.S.G. is 18.

However, it needs to be noted that Hunter's criminal history category is I, and her criminal points are zero. This is important not only because it demonstrates that she was a law-abiding citizen prior to this offense, but the U.S.S.G. commission has

released its proposed changes to the Guidelines effective November of this year. One of the soon to be adopted changes provides that a defendant with zero criminal history points should receive a 2-level downward adjustment in their total offense level. Thus, the defense respectfully submits that the court should consider this factor in fashioning the appropriate sentence.

There in one error in the PSR which may be simply due to a typographical error, in paragraph 94 it states that her bank balance in Chase Bank is $2,500, when it is only $25.

## III.

## DEFENDANT'S HISTORY AND PERSONAL CHARACTERISTICS SUPPORT THE REQUESTED SENTENCE

In <u>Gall v. United States</u>, 552 U.S. 38 (2007), the U.S. Supreme Court advised that in addition to considering the Guidelines, the "district court should…consider all the 3553(a) factors to determine whether they support the sentence requested by a party… [The court] must make an individualized assessment based on the facts presented." <u>Gall</u> at 596-597.

Furthermore, "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" <u>Pepper v. United States</u>, 562 U.S. 476 (2011), quoting <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996). The Supreme Court has found that "[u]nderlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" Id. at 1240, quoting <u>Williams v. People of the State of New York</u>, 337 U.S. 241, 247 (1949). The Supreme Court has "emphasized that [h]ighly relevant -- if not essential -- to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."

1    "Each case of sentencing is a unique case. A human person is being subjected
2    to the force of the state. The sentence cannot be calibrated mechanically by looking
3    at a chart of possible penalties. The district court has discretion to take into
4    consideration all the factors in the record." *United States v. Bragg*, 582 F.3d 965, 968
5    (9th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d
6    445 (2007)).

7    The following social history information is presented in the spirit of 18 U.S.C.
8    §3661 which sets forth, "No limitation shall be placed on the information
9    concerning the background, character, and conduct of a person convicted of an
10   offense which a court of the United States may receive and consider for the purpose
11   of imposing an appropriate sentence."

12   Moreover, as part of the sentencing algebra, U.S. District Court judges are
13   directed to consider the need for just punishment; the need or deterrence; the need to
14   protect society; and the need to provide defendants with needed educational and
15   vocational training. Considering these factors and the below information, the
16   requested sentence is a just punishment for Ms. Hunter.

17

18   A.   *Personal History and Background*

19   Hunter grew up primarily in Watts section of Los Angeles CA, where she was
20   born to a single mother. She never met her father. Money was very tight throughout
21   her childhood, the family survived on public assistance. Hunter only had her most
22   basic needs met, there was no money for anything beyond basic sustenance. Her
23   sister's father, Roscoe McNeal, lived with the family from when Hunter was three
24   years old until the age of nine. McNeal was the only father figure that Hunter knew
25   as a child. When Hunter was nine years old, she was emotionally devastated when
26   McNeal left them. Hunter never felt any stability during her childhood. (PSR ¶ 68)

27   The instability in Hunter's childhood was compounded by her mother's drug
28   addiction to crack cocaine. When Hunter was only ten years old her mother began

abusing crack cocaine, and thus she was not able to care for her children. Hunter and her siblings were left in the care of her grandmother, Roberta Love. Hunter and her siblings would go back and forth between her mother's residence and her grandmother's, but they never knew when they would see their mother again. Hunter would often not see her mother for weeks or months at a time, and this left her with deep feelings of abandonment. Hunter felt unloved, unsupported, and sad throughout her childhood. (PSR ¶ 69)

When she was 14 years old, Hunter's mother stopped using drugs and she regained parental rights. Hunter and her siblings moved in with her mother and her mother's boyfriend. He was both physically and emotionally abusive toward her mother several times per week. Hunter witnessed many incidents of domestic violence against her mother as the boyfriend would fly into uncontrollable rages. Hunter was scared for her mother's safety, and her own, she lived in constant fear of him. The boyfriend lived with the family for one to two years. (PSR ¶ 71)

While living in the Watts neighborhood of Los Angeles during her childhood criminal street gangs were rampant, along with drug trafficking and violence. During most of her childhood, Hunter feared for her own personal safety. At the age of 13, while walking in the neighborhood, she was grazed in her buttocks during a gang-related drive-by shooting. At the age of 14, she saw a dead body on the street after another drug related shooting. (PSR ¶ 72)

At the age of 14, when Hunter's mother stopped using drugs, the family moved from Watts to Compton, CA. The family gained some stability at that point, but there were still significant financial struggles. Currently, she maintains contact with her mother, but the relationship is strained as Hunter still has feelings of childhood abandonment. (PSR ¶ 73)

Hunter's childhood was traumatic, filled with instability, violence and fear. The Sentencing Guidelines do not take into account or consider Hunter's disadvantaged and traumatic childhood. Many Studies have shown that children who

are exposed to violence are more likely to suffer from anxiety, depression, attachment problems, and have aggression and conduct problems. Experiences of violence can also cause academic and cognitive problems and lead to involvement in both the juvenile and adult justice system. (U.S.C. Annenberg Center for Health Fellowship, American Journal Community Psychology, 2017, March, pages 36-49).

Despite her traumatic childhood Hunter went on to obtain her A.A. degree from Southwest Community College in Los Angeles. Hunter was gainfully employed her entire adult life until her arrest in the instant matter. She was proud to have saved enough to purchase her own home in early 2014 for her and her family. Even following her arrest, she has continued to work and is close to obtaining her commercial driver's license. (PSR ¶¶ 85 - 93)

Hunter is currently single and has three children from three previous long-term relationships: Aniyah Clark, age 16, who resides with Hunter; Shelbi McKie, age 11, who resides with Hunter; and Marcus Coulture, Jr., age 23, resides in Los Angeles. Aniyah has severe asthma and takes medication for this condition. Hunter is the sole financial support for her two daughters. She is worried about their care if she serves a custodial term. (PSR ¶ 74)

1. _Mental Health_:

Hunter has been suffering with depression since her teenage years. She has never received treatment.

2. _Physical Health:_

Since 2020, Hunter has suffered from an ovarian cyst, which is being monitored and may require surgical removal. She has several uterine fibroids, which cause severe menstrual pains. The fibroids may need to be surgically removed as well. Hunter currently does not have medical insurance, and therefore, has not been able to get these surgical procedures. If she is incarcerated the B.O.P. will be required to address and pay for her medical expenses. (PSR ¶ 79)

## IV.

## CONCLUSION

Ms. Hunter fully comprehends the seriousness of her offense.  She has taken responsibility for her actions and is committed to making amends. Hunter understands that no set of circumstances can justify violating the law. She realizes that she alone is to blame for this dilemma and is committed to never violating the law again.

The guidelines do not take into account or consider Hunter's disadvantaged childhood, trauma, and the severe financial stress which led her to commit this offense.

On the grounds set forth in this memorandum, the defense respectfully suggests that a non-guideline sentence no greater than 24 months would be "sufficient, but not greater than necessary" to satisfy the sentencing objectives set forth at 18 U.S.C. §3553(a) and serve the ends of justice in this case.

Date:  April 7, 2023                              Respectfully submitted,

                                                  LAW OFFICES OF
                                                  ROBERT M. BERNSTEIN


                                           By     _/s/ Robert M. Bernstein_____
                                                  **ROBERT M. BERNSTEIN**
                                                  **Attorney for Defendant**
                                                  **TOYA TOSHELL HUNTER**